UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § § | |
| TRIUMPH CHRISTIAN CENTER, INC. | § § § | CASE NO. 10-41239-H4-11 |
| DEBTOR | § § § | CHAPTER 11 |

**FIRST AMENDED DISCLOSURE STATEMENT REGARDING
THE PLAN OF REORGANIZATION FOR
<u>TRIUMPH CHRISTIAN CENTER, INC.</u>**

**Dated: July 7, 2011**

                                                Karen R. Emmott
                                                4615 Southwest Frwy.
                                                Suite 500
                                                Houston, TX 77027
                                                (713) 739-0008 (Telephone)
                                                (713) 481-6262 (Telecopier)

                                                **ATTORNEY FOR
                                                TRIUMPH CHRISTIAN CENTER,
                                                INC.
                                                DEBTOR**

**IMPORTANT**

**THIS FIRST AMENDED DISCLOSURE STATEMENT IS SUBMITTED TO ALL CREDITORS OF THE DEBTOR ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PLAN UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE AS TO THE DEBTOR'S PLAN OF REORGANIZATION. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE DISCLOSURE STATEMENT AND ATTACHMENTS WITH CARE AND IN THEIR ENTIRETY.**

**ON _____, 2011, THE BANKRUPTCY COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE. SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN OF REORGANIZATION HEREIN DESCRIBED IS BEING SOUGHT FROM CREDITORS AND INTEREST HOLDERS WHOSE CLAIMS AGAINST, AND INTERESTS IN THE DEBTOR ARE IMPAIRED UNDER THE PLAN OF REORGANIZATION. CREDITORS AND INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION ARE URGED TO VOTE IN FAVOR OF THE PLAN AND TO RETURN THE BALLOT INCLUDED WITH THIS DISCLOSURE STATEMENT UPON COMPLETION ADDRESSED TO KAREN R. EMMOTT, 4615 SOUTHWEST FREEWAY, STE 500, HOUSTON, TX 77027, NOT LATER THAN _____, 2011.**

# 1. INTRODUCTION

**A. General Information Concerning Disclosure Statement and Plan.**

Triumph Christian Center, Inc. (the "Debtor" or "Debtor-in-Possession") submits this First Amended Disclosure Statement ("the Disclosure Statement') under Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016 to all of its known Creditors and Interest Holders. The purpose of this Disclosure Statement is to disclose information adequate to enable Creditors and Interest Holders who are entitled to vote to arrive at a reasonably informed decision in exercising their rights to vote on the Plan of Reorganization (the "Plan"). A summary of the Plan is incorporated herein. Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to them in the Plan or in the Bankruptcy Code and Bankruptcy Rules. All section references in this Disclosure Statement are to the Bankruptcy Code unless otherwise indicated.

The Debtor has promulgated the Plan consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to provide the maximum recovery to each class of Claims and Equity Interests considering the assets and anticipated funds available for distribution to Creditors and Equity Interest Holders. The Debtor believes that the Plan permits the maximum recovery for all

classes of Claims and Equity Interests.

This Disclosure Statement is not intended to replace a careful review and analysis of the Plan, including the specific treatment of Claims and Equity Interests under the Plan. It is submitted as an aid and supplement to your review of the Plan to explain the terms of the Plan. Every effort has been made to explain fully various aspects of the Plan as they affect the Creditors and Equity Interest Holders. If any questions arise, the Debtor urges you to contact the Debtor's counsel and she will attempt to resolve your questions. You may, of course, wish to consult with your own counsel.

**B. Disclaimer.**

**NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND SECTION 1125 OF THE BANKRUPTCY CODE, AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTOR TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS AND EQUITY INTEREST HOLDERS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTOR OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS AND SCHEDULES ATTACHED.**

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTOR, ITS ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT THE DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL TO THE DEBTOR.**

**UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF. NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE CONCERNING THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.**

**WHILE THE INFORMATION PROVIDED HEREIN IS BELIEVED RELIABLE, THE DEBTOR HAS NOT UNDERTAKEN TO VERIFY OR INVESTIGATE SUCH INFORMATION, AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION.**

**DISTRIBUTION OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS ANY REPRESENTATION OR WARRANTY AT ALL, EITHER EXPRESS OR IMPLIED, BY THE DEBTOR OR ITS RESPECTIVE PROFESSIONAL CONSULTANTS THAT THE PLAN IS FREE FROM RISK, THAT THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR**

A GUARANTEE OF THE ACCURACY OF THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED SHOULD BE READ IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN CASE OF ANY INCONSISTENCY.

### C. Answers to Commonly Asked Questions.

As part of the Debtor's effort to inform Creditors and Interest Holders regarding the Plan and the Plan confirmation process, the following summary provides answers to questions which parties who receive a disclosure statement often ask.

**Who is the Debtor?**

The Debtor is Triumph Christian Center, Inc., a non-profit faith based ministry. The ministry operates a place of worship on a 23 acre site in Richmond TX, south of Highway 59 at FM 762 (the "Property"). The Property consists of two buildings that have been renovated into a religious center and a larger building under construction for worship services and activities. The two existing buildings are approximately 6,346 square feet while the building in progress will be approximately 13,000 square feet

**When did the Debtor file bankruptcy?**

The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code on December 7, 2010 (the "Petition Date").

**Why did the Debtor file bankruptcy?**

The bankruptcy was filed because its largest secured creditor, Foundation Capital Resources, Inc., posted the Property for a December 7, 2010 foreclosure sale.

**What is a chapter 11 bankruptcy?**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code that allows financially distressed businesses to reorganize their debts. The commencement of a chapter 11 case creates an estate containing all the legal and equitable interests of the Debtor in property as of the date the petition is filed. Sections 1101, 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate the debtor's business as a debtor-in-possession. The Debtor remains in possession of its properties and assets. When a chapter 11 bankruptcy case is filed, creditors are prohibited from attempting to collect debts or enforce liens against the Debtor or its assets without first obtaining approval from the Bankruptcy Court.

**Has a Creditors' Committee been formed?**

No. The United States Trustee has been unable to solicit sufficient interest to appoint a proper Committee as contemplated by 11 U.S.C. Section 1102.

**If the Plan governs how my claim is treated, what is this Disclosure Statement?**

The Bankruptcy Code requires that a plan proponent, the Debtor in this case, solicit acceptances and rejections of a proposed plan from creditors and shareholders whose claims and interests are impaired before the plan can be confirmed by the bankruptcy court. Before a plan proponent may solicit acceptances of a plan however, the bankruptcy court must approve a disclosure statement and determine that the disclosure statement contains information adequate to allow creditors and shareholders to make an informed judgment about the plan. The disclosure statement and plan are formally distributed after the bankruptcy court approves the disclosure statement. At that time, creditors and shareholders also receive a voting ballot with the disclosure statement and plan.

**Has this Disclosure Statement been approved by the Bankruptcy Court?**

On _____, 2011, the Bankruptcy Court approved this Disclosure Statement as containing adequate information. "Adequate information" means information of a kind, and in sufficient detail, as far as is practicable considering the nature and history of the Debtor and the condition of the Debtor's books and records to enable a hypothetical reasonable investor typical of holders of claims or interest of the relevant classes to make an informed judgment whether to vote to accept or reject the Plan. The Bankruptcy Court's approval of this Disclosure Statement does not constitute an endorsement by the Court of any of the representations contained in either the Disclosure Statement or the Plan.

**Do I have to attend the hearing on the Disclosure Statement and Plan?**

If you do not believe that the Disclosure Statement contains adequate information or if you believe that there is a problem with the Debtor's Plan and you want to either get additional information from the Debtor or object to the plan, you need to file a written objection stating your position on or before the deadlines imposed by the Court and come to the hearing. Debtor's counsel can discuss your concerns from the Debtor's perspective, but cannot give you legal advice and you may wish to consult your own counsel.

**How do I determine how my Claim or Interest is classified?**

To determine the classification of your Claim, you must first determine the nature of that claim or interest. Under the Plan, claims and interests are classified into a series of Classes. The pertinent sections of the Disclosure Statement and Plan disclose, among other things, the members of each particular Class, the size of each Class, what you will receive for your Claim or Equity Interest if the Plan is confirmed, and when you will receive such consideration if the Plan is confirmed.

**Why is confirmation of the Plan important?**

The Bankruptcy Court's confirmation of the Plan is a condition to the Debtor's right to carry out the treatment of creditors and shareholders under the Plan. Unless the Plan is confirmed, and any other conditions to confirmation or to the effectiveness of the Plan are satisfied, the Debtor is legally prohibited from satisfying Claims or Equity Interests as provided in the Plan.

**What is necessary to confirm the Plan?**

Under applicable provisions of the Bankruptcy Code, confirmation of the Plan requires among other things, that at least one class of impaired Claims or Interests vote to accept the Plan.

Acceptances by a class of claims means that at least two-thirds in the total dollar amount and more than one-half in number of the allowed claims actually voting in the class vote in favor of the Plan. Because only those claims or interest who vote on a Plan will be counted for purposes of determining acceptance or rejection of Plan by an impaired class, a Plan can be approved with the affirmative vote of members of an impaired class who own less than two-thirds in amount and one-half in number of the claims. Besides acceptance of the Plan by each class of impaired creditors or interests, a Bankruptcy Court also must fine that a Plan meets a number of statutory tests before it may confirm the Plan. The requirements and statutory tests generally are designed to protect the interests of holders of impaired claims or interests who do not vote to accept a plan but who will nonetheless be bound by the Plan's provisions if a Bankruptcy Court confirms a Plan. If one or more classes vote to reject a Plan, a Debtor may still request that the Bankruptcy Court confirm a plan under Section 1129(b) of the Bankruptcy Code. In this case, a Debtor must demonstrate that the Plan does not discriminate unfairly, and is fair and equitable with respect to each class of Claims or Interests that are impaired under and have not accepted the Plan. This method of confirming a Plan, is called a "cramdown". In addition to the statutory requirements imposed by the Bankruptcy Code, the Plan itself also provides for certain conditions that must be satisfied as conditions to confirmation.

**When is the deadline for returning my ballot?**

The Bankruptcy Court will direct that, to be counted for voting purposes, your ballot must be received by a date set at a later time. This date will be set forth in the Order Approving Disclosure Statement which will be sent to you.

**IT IS IMPORTANT THAT ALL IMPAIRED CREDITORS AND INTEREST HOLDERS VOTE ON THE PLAN. THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS. THE DEBTOR THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND RECOMMENDS THAT ALL IMPAIRED CREDITORS AND INTEREST HOLDERS VOTE TO ACCEPT THE PLAN.**

## II.
## OVERVIEW OF THE PLAN

An overview of the Plan is set forth below. This overview is qualified in its entirety by reference to the Plan. If the Court confirms the Plan, and in the absence of any applicable stay, and all other conditions set forth in the Plan are satisfied, the Plan will take effect on the Effective Date, i.e., on the first business day fourteen (14) days after the date on which the Confirmation Order becomes a Final Order (unless a stay of the Confirmation Order pending appeal is granted, in which case the Effective Date will be the first business day after the stay is terminated).

At its core, the Plan represents a restructuring of the indebtedness to Foundation Capital Resources Inc. The funds necessary to execute the plan will come from donations (including tithes and offerings) and giving campaigns.

## III.
## SOURCE OF INFORMATION

The financial information contained in this Disclosure Statement was compiled primarily from information provided from the accounting and business records of the Debtor. Ladell Graham, the President of the Debtor and its Lead Pastor also contributed to the information set forth herein.

# IV.
# THE DEBTOR

**A. Description of the Debtor.**

The Debtor is a Texas nonprofit corporation formed to operate a church and ministry known as Triumph Christian Center, Inc. (the "Church"). The Church has a total of 13 full-time and part-time employees. The Debtor started its ministry in the year 2000 with just three families. Today, the church has grown to a congregation of 500-550 members. The lead pastor is Ladell Graham, who is also the founder of the Church and the Debtor's President.

The church is located on a 23 acre site in Richmond, Texas, south of Highway 59 at 6601 FM 762 (the "Property"). The church site consists of two buildings that have been renovated into a religious center and a larger building under construction for church services and activities. The two existing buildings are approximately 6,346 square feet while the building in progress will be approximately 13,000 square feet. In August 2008, the Property was appraised for $3,800,000.00, based on its completion.

**B.   Prepetition Financing Transactions.**

In 2005, the Debtor acquired the Property for its church site with a $1.2 million loan from Foundation Capital Resources, Inc. ("FCRI"). From 2005 through 2008, the Debtor's congregation increased in numbers and there was a need to expand the existing facilities to accommodate a growing membership. It was decided to build a new worship facility. In order to fund its expansion, the Debtor in December 2008 entered into a construction loan with FCRI. Monthly interest payments were due for a period not to exceed 18 months under the construction loan. The Debtor executed a Deed of Trust, Assignment of Leases and Rents and Security Agreement and an Adjustable Rate Secured Note - Construction (the "Note"), thereby borrowing $2,433,500 from Foundation Capital Resources, Inc. (" FCRI") for the construction of the new building and the refinancing of the $1.2 million existing debt. In May 2010, the entire indebtedness was converted to permanent financing which called for monthly principal and interest payments in the approximate about of $19,000.00.

**C.   Events Leading to the Bankruptcy.**

The severe downturn in the national economy impacted the congregations charitable giving and donations. As a result, the Debtor was not able to make its monthly principal and interest payments to FCRI. The construction costs for the new worship facility were under bid causing a shortage of funds to complete construction. The Debtor tried to renegotiate the FCRI loan but its efforts were unsuccessful. FCRI posted the Property for a foreclosure sale to be conducted December 7, 2010, precipitating this bankruptcy filing.

**D.   Summary of the Assets and Liabilities of the Debtor**.

**Assets:**

**Cash and Cash-Equivalent Assets**. As of the Petition Date, the Debtor held cash in the following bank accounts:

| | |
|---|---|
| Capital One | $1,783.00 |
| Bank of America | $2,013.00 |

**Real Property**. As of the Petition Date, the Debtor owned 23 acres located at 6601 FM 762 Rd., Richmond, TX 77469 (the "Property). The Debtor's Schedules estimate that the value of the Property is $3,800,000.00. The real property is improved with three worship facilities.

**Furniture, Fixtures, and Equipment.** As of the Petition Date, the Debtor owned furniture, fixtures, and equipments used in its worship facilities in the amount of $122,148.00.

**Liabilities:**

**Unsecured Priority Claims.** As of the Petition Date, the following creditor(s) held unsecured priority claims:

| | |
|---|---|
| Internal Revenue Service | $20,995.52 |

**Secured Claims**. As of the Petition Date the following held Secured Claims against the Debtor:

| | |
|---|---|
| Foundation Capital Resources, Inc. | $2,336,262.56 |
| Ft. Bend County | 15,485.86 |
| City of Rosenberg | 4,235.19 |
| Internal Revenue Service | 14,231.03 |

**Unsecured Claims**. As of the Petition Date, the Debtor had unsecured creditors holding Unsecured Claims as follows:

| | |
|---|---|
| Capital One Bank | $19,013.94 |
| Crestline Hotels, Inc. | 11,625.27 |
| Jones & Carter, Inc. | 13,817.52 |
| Ladell and Gwendolyn Graham (Insider) | 25,983.43 |

E.  **Management of the Debtor and the Reorganized Debtor**

The Debtor's management will continue as it existed prior to the Bankruptcy Petition. The Debtor's operations are overseen by Ladell Graham, its President and Lead Pastor. Pastor Graham receives compensation from the Debtor for his services and he will receive compensation in the future. Pastor Graham will implement the plan approved by the Court.

F.  **Significant Events During the Bankruptcy Case.**

On December 7, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code. All Schedules and Statement of Financial Affairs were filed on the date of the bankruptcy filing.

On December 8, 2010, the Debtor filed its Application to Employ and Retain Karen R. Emmott as its Counsel of Record. On December 15, 2010, an Order was entered granting the application.

On December 10, 2010, the Debtor filed an Emergency Motion for Authority to Pay Pre-Petition and Post-Petition Employee Compensation. An Order was entered on December 15, 2010 granting the Motion.

On December 13, 2010, the Debtor filed an Emergency Motion for Authority to Use Cash Collateral. A hearing was set to consider the motion on December 15, 2010. The Debtor withdrew its Motion at the hearing.

On December 15, 2010, a Status Conference was held. An Order Regarding Status Conference was entered on December 22, 2010.

On February 3, 2011, a Creditors Meeting was held. The Debtor attended the meeting. The meeting was concluded at that time.

**G.   Pending Litigation.**

As of the Petition Date, the following lawsuit was pending against the Debtor:

Ft. Bend County ISD vs. Triumph Christian Center, Inc.
Cause No. 10-DCV-184845
434th District Court, Ft. Bend County, Richmond, TX

**H.   Affiliates**.

The Debtor does not have any affiliates.

## V.

## SUMMARY OF THE PLAN

An overview of the Plan is set forth below. This overview is qualified in its entirety by reference to the Plan. If the Court confirms the Plan, and in the absence of any applicable stay, and all other conditions set forth in the Plan are satisfied, the Plan will take effect on the Effective Date, i.e., on the first business day fourteen (14) days after the date on which the Confirmation Order becomes a Final Order (unless a stay of the Confirmation Order pending appeal is granted, in which case the Effective Date will be the first business day after the stay is terminated).

**A.   Classification and Treatment of Claims.**

The following summary of certain provisions of the Plan does not purport to be complete. The provisions of the Plan, including definitions of certain terms which are incorporated by reference as a part of the summary, are terms which are qualified in their entirety by such reference.

The Bankruptcy Code requires that claims be treated as either impaired or as unimpaired under the Plan. Unimpaired claims are claims that are satisfied in accordance with non-bankruptcy law. Impaired claims are claims that are satisfied in a manner other than in accordance with non-bankruptcy law.

The Plan establishes seven (7) classes for claims. Such classes of claims and interests are outlined below.

5.1   <u>Class 1 - Secured Claim of Foundation Capital Resources, Inc</u>. Class 1 consists of the Allowed Secured Claim of Foundation Capital Resources, Inc. in the approximate amount of $2,336,262.56. The collateral securing the Allowed Secured Claim of Foundation Capital Resources, Inc. consists of a place of worship on a 23 acre site in Richmond TX, south of Highway 59 at FM 762 (the

"Property"). The Property consists of two buildings that have been renovated into a religious center and a larger building under construction for worship services and activities. The two existing buildings are approximately 6,346 square feet while the building in progress will be approximately 13,000 square feet.

The Allowed Claim of Foundation Capital Resources, Inc. shall be restructured and modified as follows:

The note will be in the principal amount of $2,336,262.56 and will accrue interest at the rate of 5.25% per annum and will be based on a 25 year amortization.

Commencing in the first calendar month after the Effective Date, and continuing thereafter, the Debtor will make monthly payments to the Holder of the Class 1 Claim, due on the 15th day of each month, calculated to pay interest at 5.25 % per annum and to amortize the principal amount of the Class 1 Claim over 25 years. The monthly principal and interest payment will be approximately $14,000.00. In addition to these monthly amortization payments, the Debtor shall pay all insurance, tax escrow and reserve payments as determined by the deed of trust and other loan documents securing the Class 1 Claim.

The Class 1 Claim may be paid at any time prior thereto without prepayment penalty or premium.

Until the Allowed Class 1 Claim has been paid in full, the Holder of the Class1 Claim shall retain all liens, security interests and other rights provided in its deed of trust, security agreement and other loan documents except as otherwise specifically provided in the Plan. In addition to the foregoing treatment of the Allowed Class 1 Claim, such Claim may be modified, reduced, extended or paid in any manner to which the Holder of the Allowed Class 1 Claim and the Reorganized Debtor may agree in writing.

Class 1 is impaired.

5.2   Class 2 - Secured Claim of Ft. Bend County. Class 2 consists of the Allowed Secured Claim of Ft. Bend County for ad valorem taxes for tax years ending 2009 and 2010 in the amount of $15,485.86. This claim shall be paid in full with statutory interest over a five year period. The payments will be made monthly with the first payment being due and payable on the 1st day of the 1st month following 60 days after the Effective Date of the Plan. The Debtor will pay the applicable rate of interest as provided for under Section 511 of the Bankruptcy Code. Ft. Bend County shall retain all liens it currently holds, whether for pre-petition tax years or for the current tax year, on any property of the Debtor until it receives payment in full of all taxes, and interest owed under the provisions of this Plan.

Class 2 is impaired.

5.3   Class 3 - Secured Claim of City of Rosenberg. Class 3 consists of the Allowed Secured Claim of City of Rosenberg in the amount of $4,235.19 for tax years ending 2009 and 2010. This claim shall be paid in full with statutory interest over a five year period. The payments will be made monthly with the first payment being due and payable on the 1st day of the 1st month following 60 days after the Effective Date of the Plan. The Debtor will pay the applicable rate of interest as provided for under Section 511 of the Bankruptcy Code. The City of Rosenberg shall retain all liens it currently holds, whether for pre-petition tax years or for the current tax year, on any property of the Debtor until it receives payment in full of all taxes, and interest owed under the provisions of this Plan.

Class 3 is impaired.

5.4     Class 4 - Secured Claim of IRS.  Class 4 consists of the Allowed Secured Claim of the Internal Revenue Service (IRS) in the amount of $14,231.03.  This claim shall be paid in full with statutory interest over a five year period.  The payments will be made monthly with the first payment being due and payable on the 1st day of the 1st month following 60 days after the Effective Date of the Plan.  The IRS will retain its lien on the property of the Debtor until the claim is paid in full.

Class 4 is impaired.

5.5     Class 5 - Priority Unsecured Claim of IRS.  Class 5 consists of the Allowed Priority Unsecured Claim of the Internal Revenue Service (IRS) in the amount of $20,995.52.  This claim shall be paid in full over a five year period.  The payments will be made monthly with the first payment being due and payable on the 1st day of the 1st month following 60 days after the Effective Date of the Plan.

Class 5 is impaired.

5.6     Class 6 - Unsecured Claims.  Holders of Class 6 Claims are as follows:

| | |
|---|---|
| Capital One Bank | $19,013.94 |
| Crestline Hotels, Inc. | 11,625.27 |
| Jones & Carter, Inc. | 13,817.52 |
| Ladell and Gwendolyn Graham (Insider) | 25,983.43 |

Class 6 Claims will be paid, in full, but without interest, in quarterly pro-rata payments over 5 years.  As shown above, the largest Class 6 Claim is held by Ladell and Gwendolyn Graham who are insiders to the Debtor.

Class 6 is impaired.

5.7     Class 7 - Equity Interests.  Class 7 shall consist of all Interests in the Debtor as of the Petition Date.  There are no holders of Class 7 Interests because the Debtor is a non-profit corporation.

**B.     Treatment of Executory Contracts and Unexpired Leases.**

On the Effective Date, the Debtor shall be empowered to assume or reject, within thirty days, any and all executory contracts and leases not previously assumed.  The Debtor will notify all parties affected by such a rejection by filing a written notice of rejection and serving such notice on those parties.

All parties to any contract rejected will have thirty (30) days from the rejection of their executory contract in which to file a Proof of Claim for damages, if any, resulting from rejection of the contract.  Such claim will be subject to the limitation imposed by the Bankruptcy Code and all other applicable laws, rules and regulations.

The Debtor shall be permitted to negotiate the repayment of arrearages owed on any of the executory contracts that are assumed, provided the payment of same does not jeopardize the payments of any claims set forth herein.

-11-

**C. Absolute Priority Rule.**

Simply characterized, the absolute priority rule set forth in Section 1129 (b)(2)(B) of the Bankruptcy Code requires that confirmation obtained by "cramdown" meet an either/or test. Either (1) the members of each dissenting impaired class of unsecured claims must receive property of a value, as of the Effective Date of the Plan, equal in amount to such class members allowed claim; or (2) the holders of claims and interest that are junior to each dissenting impaired class of claims must not receive any property under the Plan of Reorganization on account of such junior interest. The absolute priority rule applies only in cases where a class of claims is both impaired and does not accept the Plan. Thus, the absolute priority rule does not apply to all classes of claims but only to the dissenting class and classes junior to the dissenting class.

**D. Cramdown.**

In the event that any impaired class of Claims and Equity Interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan does not discriminate unfairly and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more that it is legally entitled to receive for its claims or equity interests. If any impaired class of claims fails to accept the Plan in accordance with Section 1126 of the Bankruptcy Code, the Debtor will request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code and hereby will move the Court for confirmation in accordance therewith and specifically pleads that the Plan is fair and equitable to such class.

**E. Compromise of Claims.**

Any claim in any of the Classes may be paid in accordance with any agreement for waiver, deferral, installment payment or otherwise as agreed between the hold of any such claim and the Debtor. Any such agreement made prior to the Effective Date will be made the subject of a motion to compromise filed with the Court and noticed to the creditors and all other parties in interest who have filed with the Court requests for notices, without the necessity of modification of the Plan.

## VI.
## PREFERENCES

Under the Bankruptcy, a Debtor may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of its bankruptcy petition with respect to pre-existing debts, to the extent the transferee received more than it would have in respect of the pre-existing debt had the Debtor been liquidated under chapter 7 of the Bankruptcy Code. In the case of "insiders", the Bankruptcy Code provides for a one year preference period. There are certain defenses to such recoveries. Transfers made in the ordinary of the Debtor's and transferee's business according to the ordinary business terms in respect of debts less than 90 days before the filing of a bankruptcy are not recoverable. Additionally, if the transferee extended credit subsequent to the transfer (and prior to the commencement of the bankruptcy case), such extension of credit may constitute a defense to recover, to the extent of any new value, against an otherwise recoverable transfer of property. If a transfer is recovered by the Debtor, the transferee has an Unsecured Claim against the Debtor to the extent of the recovery. In this case, and after careful review of its book and records, the Debtor is not aware of any payment outside the ordinary course of business during the preference periods. Therefore, the Debtor does not have a basis to pursue preference actions.

## VII.
## FRAUDULENT TRANSFERS

Under the Bankruptcy Code and various state laws, the Debtor may recover certain transfers of property, including the granting of a security interest in property, made while insolvent or which rendered the Debtor insolvent. After review of its books and records, the Debtor is not aware of any fraudulent transfers at this time and does not anticipate filing any such actions.

## VIII.
.
## FEASIBILITY OF PLAN AND RISK

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. The Plan is to be implemented, if accepted and approved by the Bankruptcy Court, from donations (including tithes and offerings) and giving contributions. The Debtor believes that the Plan is feasible and meets the requirements of Section 1129(a)(11) of the Bankruptcy Code.

## IX.
## ALTERNATIVES TO PLAN

The alternatives to the Plan are conversion to chapter 7 or dismissal.

The Plan affords holders of claims the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interests of such holders. If a conversion of the case were to occur, then a trustee would be elected or appointed to liquidate the Debtor's assets.

The Debtor does not believe that the case should be converted to Chapter 7. It is the Debtor's belief that the unsecured creditors would receive nothing in a chapter 7 liquidation because the secured creditors would foreclose on their liens and there would be nothing available for the creditors. Under Chapter 7, a secured creditor whose claim is fully secured would be entitled to full payment of principal and interest, from the proceeds of the sale of its collateral.

The Debtor believes that the value of distributions under the Plan will exceed the value of distributions that would be available after the liquidation of the Debtor under chapter 7 of the Bankruptcy Code. A liquidation under chapter 7 would require the Bankruptcy Court to appoint a trustee to conduct the liquidation of the Debtor's remaining assets. Such a trustee would have limited historical experience or knowledge of this chapter 11 case or the Debtor's records, assets or business. The fees charged by a chapter 7 trustee and any professionals retained by the trustee will impose substantial administrative costs on the Debtor's estate that would not be incurred under the Plan. Further, there is no assurance as to when distributions, if any, would occur in a chapter 7 liquidation.

Dismissal would place the Debtor in the position it was in prior to the filing of the Chapter 11 and the Debtor would no longer have the protection of the Bankruptcy Court.

Thus, the Debtor believes that confirmation of the Plan is preferable to the alternatives because the Plan should maximize value, ensure resolution of this chapter 11 case and provide for

equitable distributions to the Debtor's Creditors.

## X.
## EFFECT OF CONFIRMATION

Upon the date of the final order confirming the Plan:

1. The provisions of the Plan shall bind the Reorganized Debtor and any creditor, whether or not they have accepted the Plan.

2. Except as otherwise provided in the Plan, all property of the Debtor and of the Estate shall vest in the Reorganized Debtor free and clear of liens, claims and encumbrances, except as otherwise provided in the Plan and other than any contractual secured claims granted under any lending agreement, on the condition that the Reorganized Debtor complies with the terms of the Plan, including the making of all payments to creditors provided for in the Plan. If the Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in the Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the Bankruptcy Estate in the converted case.

## X1.
## BAR DATE FOR FILING PROOFS OF CLAIM

Pursuant to Bankruptcy Local Rule 3003, any creditor desiring to receive a distribution under provisions of this Plan, whose claim is not evidenced by a Court-authorized order or the Debtor's schedules, must file a proof of claim or request for compensation with the Bankruptcy Court within ninety (90) days after the date set for the meeting of the creditors. Unless a claim is listed as disputed, contingent or unliquidated, each secured creditor's claim will be allowed in the absence of filing of a proof of claim in a different amount or status on or before the last day fixed for filing claims. Claims listed as disputed, contingent or unliquidated will not be allowed unless a proof of claim with all supporting documents was filed or the claim was scheduled by the Debtor. In the event a creditor has filed a proof of claim in these proceedings with which the Debtor disagrees, the Debtor shall file an objection to said claim not later than thirty (30) days after confirmation of the Plan.

Any proof of claim which is not or has not been timely filed or scheduled shall be of no force and effect. No distribution will me made to any creditor that has not timely complied with this provision.

The failure of Debtor to object to any claim filed herein does not prejudice the Debtor's rights to proceed against any part regarding any causes of action that it may have had at the time this case was filed or that may have accrued during the pendency of this against any creditor.

## XII.
## MODIFICATION OF DISCLOSURE STATEMENT

The Debtor may propose amendments to or modification of this Disclosure Statement at any time prior to confirmation, without leave of the court. After confirmation, the Debtor may, with approval of the Court, so long as it does not materially or adversely affect the interest of the creditors or other parties-in-interest as set forth herein, remedy any defect or omission, reconcile any inconsistencies in this Disclosure Statement, or in the order approving this Disclosure

Statement, in such a manner as may be necessary to carry out the purposes and intent of this Disclosure Statement.

## XIII.
## PAYMENT OF UNITED STATES TRUSTEE QUARTERLY FEES

The Reorganized Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 11 U.S.C. Section 1930(a)(6) until such time as this Bankruptcy Court enters a final decree closing this chapter 11 case, or enters an order either converting his case to a case under chapter 7 or dismissing this case. After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and serve on the United States Trustee a financial report for each quarter, or portion thereof, that this chapter 11 case remains open in a format prescribed by the United States Trustee.

## XIV.
## RELEASES IN THE PLAN

<u>Injunctions.</u> Except as otherwise specifically provided in this Plan or in the Confirmation Order, if the Effective Date occurs, the Confirmation Order shall be deemed to permanently enjoin all Persons that have held, currently hold or may hold a Claim against, or be owed obligations by, the Debtor or the Estate or any Representative of the Debtor or the Estate, or have held, currently hold or may hold an Equity Interest in the Debtor, from taking any of the following actions on account of such Claim or Equity Interest: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; (iii) creating, perfecting or enforcing in any manner, directly or indirectly, any lien, charge, encumbrance or other lien of any kind against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; (iv) asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives; and (v) proceeding in any manner, directly or indirectly, in any place whatsoever against the Debtor, the Estate, the Plan Assets, or any respective Affiliates or Representatives.

<u>No Liability for Solicitation or Participation</u>. Pursuant to Section 1125 of the Bankruptcy Code, Persons that solicit acceptances or rejection of this Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under or in connection with this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

## XVI.

## FEDERAL INCOME TAX CONSEQUENCES

The Debtor believes that the following discussion generally sets forth the Federal Income Tax consequences to creditors upon confirmation and consummation of the Plan. No ruling has been sought or obtained by the Debtor from the Internal Revenue Service ('IRS') with respect to any of these matters. The following discussion of Federal income tax consequences is not binding on the

-15-

IRS and is general in nature. No statement can be made herein with respect to the particular Federal income tax consequences to any creditor.

The Debtor believes that the following discussion generally sets forth the Federal Income Tax consequences to creditors upon confirmation and consummation of the Plan. No ruling has been sought or obtained by the Debtor from the Internal Revenue Service ('IRS') with respect to any of these matters. The following discussion of Federal income tax consequences is not binding on the IRS and is general in nature. No statement can be made herein with respect to the particular Federal income tax consequences to any creditor.

The federal income tax consequences of the Plan are complex and are subject of significant uncertainties. The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt. In addition, this summary does not address state, local or foreign income or other tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, financial institutions, organizations, certain expatriates, or former long term residents of the United States, or pass-through entities or investors in pass-through entities). Holders of claims and interest are urged to consult with their own tax advisors to determine the tax consequences to each of them.

## XVII.
## CONCLUSION

The Debtor believes that approval of the Plan will provide an opportunity for creditors to receive more in payment on account of their claims that would be received in a liquidation by a Chapter 7 Trustee.

This Disclosure Statement is subject to the approval of the Bankruptcy Court after notice and hearing.

Respectfully submitted this 7th day of July, 2011.

                                              Triumph Christian Center, Inc.

                                              By: /s/ Ladell Graham
                                              President

Of Counsel:

Karen R. Emmott
4615 Southwest Frwy., Suite 500
Houston, TX 77027
(713) 739-0008 Telephone
(713) 481-6262 Telecopy
Attorney for Debtor